831 So.2d 562 (2002)
Leon FELDER a/k/a Boogie, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01068-COA.
Court of Appeals of Mississippi.
November 26, 2002.
*565 Paul Mcgerald Luckett, McComb, Greta Mack Harris, Edwards, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before THOMAS, P.J., IRVING and MYERS, JJ.
MYERS, J., for the court.
¶ 1. Leon Felder (Felder) was tried and convicted in the Circuit Court of Pike County of the crime of sexual battery, Honorable Keith Starrett presiding. Felder was sentenced to serve, as a habitual offender, life imprisonment without the possibility of probation, parole, or early work release in the custody of the Mississippi Department of Corrections. After his conviction, Felder filed a motion for a judgment notwithstanding the verdict or alternatively a new trial. From the denial of that motion, Felder perfected his appeal. Felder asserts the following issues:
1. WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A SPEEDY TRIAL; AND
2. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

STATEMENT OF FACTS

Presented by the Prosecution
¶ 2. On July 9, 2000, Jane Doe (Jane) was working the night shift at a Pike County truck stop. In the early morning hours a man entered the store. At first he sat down at a table, smoked a cigarette and attempted to make conversation with Jane. The man began to make sexual comments to Jane. Jane tried to ignore him and asked the man to leave but he refused to leave the store. The man grabbed her, knocked over a chair, and scattered a deck of cards with which she had been playing solitaire. The man dragged her behind a counter located at the back of the store, threatened to crush her skull with a nearby sledgehammer, removed her bottom clothing, and penetrated her vagina with his penis. At some point, either Jane knocked over a bottle of bleach while trying to resist or the rapist poured bleach on her. When she heard someone in the store call out "Hello" twice, Jane was able to call out for help stating that she was being raped. A man, later identified as Daniel Barclay (Barclay), saw her and the man. Barclay asked what was going on and rescued Jane by taking her to his truck. Barclay called the police. Barclay had started to take Jane to the police but she wanted to wait for the police at the truck stop. The rapist ran off into the woods. Jane and Barclay gave a description of the man to the police. Barclay and the police testified as to the physical and emotional condition of Jane. She was treated by an emergency room staff as a rape *566 victim with choke marks and abrasions on her neck and chemical burns from the bleach on her buttocks. Barclay and the police corroborated the condition of the store and the presence of bleach. The emergency room staff corroborated the physical and emotional condition of Jane. Jane has been treated for post-traumatic stress disorder.
¶ 3. The police were informed that Felder was seen not far from the truck stop shortly after the incident. Jane failed to pick Felder out of a photographic array, but both Jane and Barclay were able to pick Felder out of a physical lineup. Felder was arrested on July 28, 2000.[1] Felder was indicted on October 25, 2000, and the indictment was served on October 31, 2000. Felder waived his arraignment on November 9, 2000. On December 19, 2000, a trial date was set for February 13, 2001. The trial date was later reset for May 21, 2001. The reason for the delay was two-fold: an unusually crowded court docket and awaiting the results of DNA testing.
¶ 4. Felder asserted his right to a speedy trial on May 8, 2001. The trial would have begun on May 21, 2001, as scheduled but Felder fired his attorney and requested time to consult with a second DNA expert.[2] On June 21, 2001, the trial judge conducted a hearing on Felder's motion for a speedy trial. The prosecution put on evidence that there was an unusually heavy court docket necessitating a need to reset Felder's trial date. The delays for DNA testing were caused by a combination of an illness of the investigator and a miscommunication from the crime lab regarding the crime lab's reorganization. The trial judge determined that no speedy trial violation had occurred. Felder's trial was conducted on June 25 and 26, 2001. Felder moved for a mistrial after Jane fainted outside the courtroom after her testimony. Some of the jurors saw her faint. The trial judge made an inquisition as to how many jurors saw Jane faint and if they would be able to continue as jurors by excluding the fainting from their deliberations. Felder was convicted of sexual battery. The prosecution amended the indictment to reflect Felder's status as a habitual offender. Felder was sentenced to life imprisonment without the possibility of probation, parole, or early work release in the custody of the Mississippi Department of Corrections.

Presented by the Defendant
¶ 5. Felder does not deny that he had sexual intercourse with Jane, but rather claimed that the intercourse was consensual. Felder testified that after an evening at the Playhouse club, he left the club with two unknown women and an unknown man. After he and the group bought some crack cocaine, Felder needed to use the restroom. The group stopped so Felder could use a restroom at an Exxon. When he returned, the two women and the man were gone. Felder then realized that one of the women took his wallet while he was in the car. Felder began walking home. He entered the truck stop where Jane was working. The two began a long conversation which culminated in him offering two rocks of crack cocaine in return for sex. Felder claimed the two of them engaged in consensual sex. When Barclay called out, Jane started acting as though she was being raped. Felder tried to explain to Barclay that he was just having "loving *567 sex." Felder believed Jane claimed rape because she did not want to get into trouble for having sex while at work.
¶ 6. Felder agrees that sexual intercourse occurred. The disagreement lies as to whether there was consent.

LEGAL ANALYSIS
1. WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A SPEEDY TRIAL.

Constitutional Right to a Speedy Trial
¶ 7. The Court will give the trial court's findings the same deference as a jury verdict and will not reverse the trial judge upon appeal unless manifestly wrong. Humphrey v. State, 759 So.2d 368, 375(¶13) (Miss.2000); Jenkins v. State, 607 So.2d 1137, 1138 (Miss.1992).
¶ 8. A criminal defendant has a constitutional right to a speedy trial. This right is guaranteed under the Sixth Amendment of the United States Constitution. The right is applicable to the states through the Fourteenth Amendment of the United States Constitution. The right to a speedy trial is also guaranteed under Article 3, Section 26 of the Mississippi Constitution of 1890. A defendant's constitutional right to a speedy trial attaches at the time a person has been effectively accused of a crime. Mitchell v. State, 792 So.2d 192, 210(¶67) (Miss.2001); Simmons v. State, 678 So.2d 683, 688 (Miss.1996); Skaggs v. State, 676 So.2d 897, 900 (Miss. 1996); State v. Magnusen, 646 So.2d 1275, 1278 (Miss.1994); Noe v. State, 616 So.2d 298, 300 (Miss.1993); Bailey v. State, 463 So.2d 1059, 1062 (Miss.1985); Perry v. State, 419 So.2d 194, 198 (Miss.1982).
¶ 9. Although there is no specific time frame, a delay of more than eight months triggers an inquiry into the reasons that postponed the defendant's day in court. Sharp v. State, 786 So.2d 372, 380(¶15) (Miss.2001); Jenkins, 607 So.2d at 1139; Flores v. State, 574 So.2d 1314, 1322 (Miss.1990); Jaco v. State, 574 So.2d 625, 630 (Miss.1990). Although a delay is presumptively prejudicial under the above authority, the delay does not automatically establish that the defendant was denied his right to a speedy trial. Instead, the delay merits a closer examination of the factors announced in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); Skaggs, 676 So.2d at 900; Magnusen, 646 So.2d at 1280.
¶ 10. The Barker test used by the courts in determining if a speedy trial violation has occurred includes: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of his rights; and (4) the prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182; Mitchell, 792 So.2d at 211(¶ 70). No single factor is dispositive. Skaggs, 676 So.2d at 900. The appellate court looks at the totality of the circumstances in determining whether a defendant's rights have been violated. Watts v. State, 733 So.2d 214, 235(¶61) (Miss.1999); Herring v. State, 691 So.2d 948, 955 (Miss.1997); Flores v. State, 574 So.2d at 1322; Trotter v. State, 554 So.2d 313, 316 (Miss.1989).
¶ 11. In essence, Barker is a balancing test. There is no mathematical formula in existence according to which the Barker weighing and balancing process must be performed. Snow v. State, 735 So.2d 1094, 1098(¶ 22) (Miss.Ct.App.1999). The trial court's findings of fact will not be reversed unless manifestly wrong. Walters v. Patterson, 531 So.2d 581, 583 (Miss.1988).

A. Length of the delay
¶ 12. The Mississippi Supreme Court has held that any delay of eight months or longer is presumptively prejudicial. *568 Sharp, 786 So.2d at 380(¶15); Birkley v. State, 750 So.2d 1245, 1249 (¶14) (Miss. 1999); Jenkins, 607 So.2d at 1139; Flores, 574 So.2d at 1322; Jaco, 574 So.2d at 630. The starting date to measure delay under a person's Sixth Amendment guarantee of a speedy trial is when that person was "accused." This can be an arrest, an indictment, or any formal charge, whichever is the first to occur. United States v. Marion, 404 U.S. 307, 313-15, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (stating arrest or formal charges begin speedy trial period); Box v. State, 610 So.2d 1148, 1150 (Miss.1992).
¶ 13. Felder was arrested on July 28, 2000. The trial date was set for February 13, 2001, reset for May, 21, 2001, and ultimately reset for and tried on June 25, 2001. The trial was reset from May 21, 2001 to June 25, 2001 because Felder had dismissed his attorney and requested a continuance for time to consult another expert. The length of time from the July 28, 2000 arrest to the May 21, 2001 reset trial date was more than eight months. As such, the trial court correctly found that the length of delay was presumptively prejudicial. However, this factor standing alone is insufficient for reversal, but requires a close examination of the remaining factors. Handley v. State, 574 So.2d 671, 676 (Miss.1990).

B. Reason for the delay
¶ 14. The burden is on the State to provide an accused person with a speedy trial. Skaggs, 676 So.2d at 901. If the defendant is the reason for the delay or caused the delay, he will not be allowed to complain. Perry, 419 So.2d at 199. Delays not attributable to the defendant weigh against the prosecution unless the State can show good cause for the delay. Vickery v. State, 535 So.2d 1371, 1377 (Miss.1988). The trial judge moving a trial to the next term of court because it was pre-empted by another trial is considered "good cause shown" under this analysis. McGhee v. State, 657 So.2d 799, 803 (Miss. 1995); Fleming v. State, 604 So.2d 280, 299 (Miss.1992). The same rationale should apply when the defendant's constitutional right to a speedy trial, as opposed to his statutory right, is at issue. McGhee, 657 So.2d at 803.
¶ 15. In this case, the trial judge conducted a hearing on the issue of whether there was a speedy trial violation. The prosecutor presented evidence that the court docket was extremely congested. Testimony from the circuit court administrator as to the unusually high number of felony cases that year bolstered the prosecutor's evidence. Evidence was also presented that there had been a delay in DNA testing. A combination of an illness of the investigator, which resulted in a delay in submitting the DNA for testing, and a miscommunication from the crime lab as to whether any additional testing was to be done before the reorganization of the crime lab were presented as additional reasons for the delay. The prosecutor presented evidence that there was no one else available to handle the submission of the DNA evidence for testing and that immediately after the notification that the crime lab was not going to test the DNA sample, the prosecution had it sent, at great expense, to a certified private lab. The DNA evidence to link Felder to the crime eventually became a moot point as Felder admitted to having sexual intercourse with the victim. The appellate courts are "hesitant to weigh the delay heavily against the State where the cause lies with a `[tentacle] of the State,' such as the State crime lab, rather than with the district attorney's office." State v. Woodall, 801 So.2d 678, 683(¶16) (Miss.2001).
*569 ¶ 16. A congested trial court docket may constitute "good cause" for a trial's delay. McGhee, 657 So.2d at 802; Buggs v. State, 738 So.2d 1253, 1257(¶ 12) (Miss.Ct.App.1999). The trial court properly found that even if the DNA tests had been submitted and completed in a timely manner, the trial would have still been delayed by the overcrowded court docket. Polk v. State, 612 So.2d 381, 387 (Miss. 1992). The reason for the delay weighs in favor of the prosecution.

C. The defendant's assertion of his rights
¶ 17. While the defendant has some responsibility to assert his right to a speedy trial, the primary burden falls on the courts and the prosecutor to assure that cases are brought to trial in a timely fashion. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991); Flores, 574 So.2d at 1323. "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532, 92 S.Ct. 2182. A defendant's failure to assert his right to a speedy trial until near the time of trial weighs against him, but is not itself conclusive. Spencer v. State, 592 So.2d 1382, 1388 (Miss.1991); Smith v. State, 550 So.2d 406, 409 (Miss.1989); Estes v. State, 782 So.2d 1244, 1251(¶12) (Miss.Ct.App.2000). Felder did not assert his right to a speedy trial until May 8, 2001. This was less than two weeks from his scheduled trial date of May 21, 2001. At no time before then did Felder assert his right to a speedy trial. In fact, the trial date had to be reset to a later date of June 25, 2001, because of reasons attributable to Felder. Although Felder raised his right to a speedy trial, the closeness to the trial date, the fact that he had not asserted the right earlier, and the fact that he later received a continuance because of his dismissal of counsel all weigh in favor of the prosecution.

D. The prejudice to the defendant.
¶ 18. Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: (1) prevention of oppressive pre-trial incarceration, (2) limitation of the possibility of impairment of defense, and (3) minimization of anxiety and concern of the accused. Barker, 407 U.S. at 532, 92 S.Ct. 2182. A speedy trial claim requires showing of actual prejudice and intentional delay. Beckwith v. State, 615 So.2d 1134, 1144 (Miss.1992). An affirmative showing of prejudice is necessary in order to prove a denial of the constitutional right to a speedy trial. Herring, 691 So.2d at 956; Skaggs, 676 So.2d at 901-02; McGhee, 657 So.2d at 804. Felder testified in a hearing on the motion that the delay had caused a detrimental effect on the relationship between Felder and his previous attorney resulting in the need of Felder to dismiss the attorney. Felder also testified that he had been prejudiced because the truck stop had undergone renovations, although there was no evidence why this prejudiced Felder.
¶ 19. When the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting the defendant's speedy trial claim. Perry v. State, 637 So.2d 871, 876 (Miss.1994). Felder later testified that he fired his attorney for trying to persuade Felder to enter a plea bargain. Felder also admits that only the lack of consent to sexual intercourse was in question. The trial court found that the defendant had not been prejudiced in any way.

Conclusion
¶ 20. Although more than eight months had passed from the date of Felder's arrest *570 to the date of trial, minus the continuance attributable to Felder, the trial judge was correct in his determination that the reason for the delay showed sufficient good cause, the defendant asserted his right to a speedy trial late in the process, and that there was no actual prejudice against Felder.

Statutory Right to a Speedy Trial
¶ 21. While the constitutional right to speedy trial begins upon arrest, the statutory right to a speedy trial begins with arraignment. Black v. State, 724 So.2d 996, 1001(¶ 14) (Miss.Ct.App.1998). Mississippi Code Annotated § 99-17-1 (Rev.2000) reads as follows:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
With regard to this statute our supreme court has stated:
Where the accused is not tried within 270 days of his arraignment, the State has the burden of establishing good cause for the delay since the accused is under no duty to bring himself to trial. Continuances for "good cause" toll the running of the 270 day period, unless "the record is silent regarding the reason for the delay," and then "the clock ticks against the Sate because the State bears the risk of non-persuasion on the good cause issue." ... Continuances that are attributed to the defendant stop the running of the clock and are deducted from the total number of days before trial.
Herring, 691 So.2d at 953 (citations omitted).
¶ 22. A finding of good cause will be left undisturbed where there is substantial credible evidence in the record from which it could have been made. McNeal v. State, 617 So.2d 999, 1007 (Miss.1993). The court has found good cause to include congested trial court dockets under certain circumstances. McGhee, 657 So.2d at 802; Polk, 612 So.2d at 387; Buggs, 738 So.2d at 1257(¶ 12). Felder waived his arraignment on November 9, 2000. He went to trial on June 25, 2001. Accordingly, the statutory speedy trial time period had not run.
2. WHETHER THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 23. Our standard for reviewing challenges to convictions based on whether the verdict is contrary to the evidence is well established. As to the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict. Jones v. State, 635 So.2d 884, 887 (Miss.1994). We reverse when, with respect to an element of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993). As to the weight of the evidence, the trial court is given discretion to order a new trial in the face of overwhelming evidence contrary to the jury's verdict in order to prevent an unconscionable injustice. Id. at 781. The Mississippi Supreme Court stated in McClain, the familiar standard of review for a sufficiency of the evidence question:
[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [the defendant's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight *571 and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. at 778 (citations omitted).
¶ 24. A mistrial should only be granted in those instances where the judge is incapable of taking any action which would correct the improper occurrence. Madere v. State, 794 So.2d 200, 214(¶ 47) (Miss.2001). Felder argues that the judge should have declared a mistrial because the evidence, without the sympathy for Jane caused by some of the jurors observing her faint, was insufficient to find him guilty. The trial judge admonished the jurors and made sure that sympathy was not caused nor would sympathy for Jane be used in their deliberations. Unless there is an abuse of discretion by the trial judge in denying a motion for mistrial, the appellate court will not reverse the decision. Id. at 215(¶ 53); Ragin v. State, 724 So.2d 901, 904(¶ 13) (Miss.1998); Chase v. State, 645 So.2d 829, 848 (Miss. 1994). A juror is presumed to follow the instructions of the judge. Ragin, 724 So.2d at 904(¶ 13). It is rather unfair to commit a sexual battery against a woman and then complain because she fainted under the strain of testifying. Chase, 645 So.2d at 848 ("[I]t seems rather unfair to kill a woman's husband and then complain because she cries.").
¶ 25. Because Felder admitted to sexual intercourse with Jane, the prosecutor had to only prove the age requirements of the victim and the aggressor and that there was a lack of consent. Felder only defended on the ground that there was consensual sexual intercourse. The prosecution presented the testimony of Jane describing the incident, testimony of Barclay and the police of the condition of the store and of Jane, testimony of the medical staff that treated Jane concerning the emotional and physical condition of Jane, and testimony that Felder was identified in a physical lineup. There was sufficient evidence for the jury, without sympathy for Jane, to convict Felder.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF LIFE AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Felder was in custody from the date of his arrest through the date of his conviction.
[2] Although a rape kit was completed, sperm was found only on the vulva not in the vagina of Jane. The DNA evidence found could not exclude nor pinpoint Felder as the rapist. This point became moot because Felder admitted to having sexual intercourse with Jane.