KING, C.J.,
for the Court.
¶ 1. Wayne Grant was convicted of sexual battery by the Circuit Court of Perry County, Mississippi. He was sentenced as an habitual offender to a term of thirty years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Grant has appealed and raises the following issues which we quote verbatim:
I. Whether the trial court committed reversible error in not granting the [defendant's [mjotion to [dismiss for [l]ack of [s]peedy [t]rial.
II. Whether the trial court committed reversible error by not granting the defendant’s motion to suppress certain crime lab evidence and allowing said objected evidence into the trial.
III.Whether or not the verdict rendered by the jury is against the weight of the evidence and contrary to the principles of justice.
FACTS
¶ 2. Ms. Davis[1] testified that on April 14, 2001, she heard someone knock on a window of her home in Beaumont, Mississippi. The individual was one of her nephews, Wayne Grant, whom Ms. Davis allowed to enter her home. According to Ms. Davis, Grant began rubbing on her and stated that his wife used to “take care of him.” Ms. Davis stated that Grant then raped her in the middle bedroom of her home.
¶ 3. The next day, one of Ms. Davis’ daughters, visited her mother and noticed that her mother seemed “down.” Upon inquiry, Ms. Davis told her daughters that Grant had raped her. One of her daughters reported this to the Beaumont Police Department.
¶4. Wayne Penton, Police Chief of the Beaumont Police Department, came to Ms. Davis’ home where he spoke with her daughters about the incident. Because Chief Penton’s department did not investigate felonies, he contacted the Perry County Sheriffs Department. Officer Jody Lott of the Perry County Sheriffs Department was sent to the scene.
¶ 5. Upon arrival, Officer Lott talked with Chief Penton and family members. As a part of his investigation, Officer Lott took the sheets from the bed (where the incident transpired) and certain items of clothing which he placed into plastic bags and placed them into his patrol car.
¶ 6. Ms. Davis had been transported to the Perry County Hospital by family members. Officer Lott went to the hospital to *319 speak with Ms. Davis, leaving the bags of evidence locked in his patrol car. Ms. Davis told Officer Lott that Grant was her attacker. Officer Lott’s shift , ended while he was at the hospital with Ms: Davis. Officer Mitch Nobles came to the hospital and relieved Officer Lott. Lott informed Officer Nobles about what had transpired, and gave him the bags of evidence.
¶ 7. Officer Nobles locked the bags in his patrol car and went back into the hospital to obtain a statement from Ms. Davis. The bags of evidence remained with Nobles in his patrol car until the next morning. With the end of his shift, Nobles took the bags of evidence to the sheriffs department, where they were given to Officer Jimmy Smith. Smith removed the evidence from the plastic bags, and sealed it in paper bags. Smith then placed the bags of evidence in the evidence safe, which was located in his office. Later, these items were moved to a locked room in the courthouse, to which only the sheriff had a key. On February 19, 2002, Smith transported the evidence to the Mississippi Crime Lab in Jackson.
¶8. On April 15, 2001, Officer Nobles took a rape kit to the hospital to be administered to Ms. Davis. The kit was administered by Dr. Derrick Duffield, an emergency room physician at Perry County Hospital. After the kit’s administration, Officer Nobles carried it back to the sheriffs department and placed it in the refrigerator. The rape kit was sent to the crime lab. According, to Smith, the kit came back negative.
¶ 9. In August 2002, the sheriffs department was authorized to obtain a-blood sample from Grant. Smith and a health department representative took a blood sample from Grant after he was taken into custody. Smith placed the sample in an evidence bag in a refrigerator until it could be transported to the crime lab. Smith asked Officer Benjamin Strahan of the Forrest/Perry Metro Narcotic’s Task Force to take the sample to the crime lab. Officer Strahan took the sample to the Forrest County Sheriffs Office and placed it in their refrigerator'. Because Officer Strahan was unable to go to the crime lab, he asked Officer Glenn Moore of the Forrest/Perry Metro Narcotic’s Task Force to take the sample to the crime lab in Jackson.
¶ 10. Grant was arrested in April 2001 and charged with sexual battery. He was indicted on June 6, 2002. After trial on February 26-28, 2003, Grant was found guilty of the charge.
ISSUES AND ANALYSIS
I.
Whether the trial court erred in denying Grant’s motion to dismiss for lack of a speedy trial.
¶ 11. Grant argues that his motion to dismiss for lack of a speedy trial should have been granted because he “did not receive a preliminary hearing until February 2002, 305 days .after his arrest on April 16, 2001.” He maintains that his right to due process began on the day he was incarcerated.
¶ 12. “A criminal defendant has a constitutional right to a speedy trial. This right is guaranteed under the Sixth Amendment of the United States Constitution. The right is applicable to the states through the Fourteenth Amendment of the United States Constitution. The right to a speedy trial is also guaranteed under Article 3, Section 26 of the Mississippi Constitution of 1890.” Felder v. State, 831 So.2d 562(¶ 8) (Miss.Ct.App.2002). The supreme court has held that the defendant’s constitutional right to a speedy trial attaches at the time of formal indictment or when he *320 is arrested, whichever occurs first. Handley v. State, 574 So.2d 671, 674 (Miss.1990); Perry v. State, 419 So.2d 194, 198 (Miss.1982).
¶ 13. To determine whether the right to a speedy trial has been violated, this Court applies the balancing test of Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), Spencer v. State, 592 So.2d 1382, 1387 (Miss.1991). The Barker factors include: (1) length of the delay, (2) reason for the delay, (3) the defendant’s assertion of his rights, and (4) the prejudice to the defendant. Id. Because no single factor is dispositive, this Court examines these factors within the context of each case. Skaggs v. State, 676 So.2d 897, 900 (Miss.1996).

Length of Delay

¶ 14. The first factor is the length of delay. The supreme court has held that a delay of eight months or longer is presumptively prejudicial. Sharp v. State, 786 So.2d 372 (¶ 16) (Miss.2001). The chronology of events in this case is as follows:
April 16, 2001 Arrested for burglary of a dwelling and sexual battery
September 24, 2001 Motion for a preliminary hearing
November 14, 2001 Motion for speedy trial
December 19, 2001 Motion for dismissal
January 2002 Preliminary Hearing
June 6, 2002 Indictment filed
June 12, 2002 Arraignment order filed
June 18, 2002 Motion to dismiss for lack of speedy trial
August 9, 2002 Motion by prosecution to draw blood samples
August 20, 2002 Motion to draw blood samples granted
September 9, 2002 Trial set; continued (another case set for same day); State awaiting lab results
September 19, 2002 State received lab results
September 23, 2002 State filed motion for notice of alibi
September 27, 2002 State asked for DNA analysis of semen that came back from crime lab
November 20, 2002 State received DNA analysis
February 18, 2003 Motion to dismiss filed for lack of a speedy trial
February 26, 2003 Tried for sexual battery
¶ 15. From April 16, 2001, the date of arrest, to February 26, 2003, the date of trial, approximately twenty-two months elapsed. This delay is therefore presumptively prejudicial. That presumptive prejudice requires this Court to consider the other Barker factors.

Reasons for the Delay

¶ 16. The State bears the responsibility of bringing a defendant to trial. Turner v. State, 383 So.2d 489, 491 (Miss.1980). The State asserts the following reasons for the delay in bringing Grant to trial: (1) the victim, an elderly lady with medical concerns, was unable to come to grand jury sessions, and (2) the attorney appointed to represent Grant was involved in plea negotiations with the State during the fall of 2001 but ended the negotiations upon being elected county attorney in November 2001. As a result, Grant was without representation until some time in February 2002 when another attorney was appointed. According to the State, Grant was not indicted during the fall of 2001 because the parties were close to reaching a plea agreement. After negotiations with Grant’s newly appointed attorney failed, the State sent the evidence to the crime *321 lab. The results were returned in April 2002 and Grant’s case was presented at the next grand jury session in June 2002.
¶ 17. Plea negotiations have been considered as a good cause for delay. Taylor v. State, 672 So.2d 1246, 1259 (Miss.1996). Likewise, a change in defense attorneys is beyond the control of the State, and is considered good cause for delay. Craft v. State, 832 So.2d 467(¶ 15) (Miss.2002). Waiting for crime lab results has also been considered a good cause reason for delay, State v. Magnusen, 646 So.2d 1275, 1281 (Miss.1994), however, the State has the burden of showing that it acted with due diligence in submitting evidence to the crime lab for examination.
¶ 18. For these reasons, this Court finds that the time period between the date of arrest and the indictment should be weighed slightly against the State. Grant was arrested on April 16, 2001, and indicted on June 6, 2002. Once the arraignment order was filed in June, 2002, the trial was set for September 9, 2002, approximately three months after Grant’s indictment. A preferred trial setting in another case caused Grant’s case to be continued. The next available date for this matter to be tried was February 26, 2003. The lack of available time on the court’s docket is an acceptable reason for delay. Adams v. State, 583 So.2d 165, 167 (Miss.1991).
¶ 19. When considered as a whole, the reasons for delay favor neither party.

Assertion of the Right

¶ 20. While it is the State’s duty to insure that the defendant receives . a speedy trial, a defendant bears some responsibility to assert this right. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991).
¶ 21. According to Grant, he had filed “numerous pro se motions and request for speedy trial” with the circuit clerk. He claimed the requests were filed in November and December 2001. However, most of Grant’s request appear to have been for dismissal for lack of a speedy trial, as opposed to a request for a speedy trial. A motion to dismiss for lack of a speedy trial is not the same as a demand for a speedy trial. Rhyne v. State, 741 So.2d 1049 (¶ 20) (Miss.Ct.App.1999).
¶ 22. This factor favors neither party.

Prejudice to the Defendant

¶ 23. Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: (1) prevention of oppressive pre-trial incarceration, (2) limitation of the possibility of impairment of defense, and (3) minimization of anxiety and concern of the accused. Barker, 407 U.S. at 532, 92 S.Ct. 2182.
¶ 24. Grant alleges that he was prejudiced by the delay because he was “unable to recall the names and addresses of witnesses that would support his alibi.” Grant further asserts that the denial of a preliminary hearing in September 2001 prejudiced him because during this time, the only evidence against him was an unsupported affidavit. He claims that the court would have been forced to reduce his bond or release him from custody.
¶ 25. In order for this factor to weigh in grant’s favor, he must show some actual prejudice. Jefferson v. State, 818 So.2d 1099 (¶¶ 21, 22) (Miss.2002). Mere pretrial detention, without more, is not considered prejudicial. Id. Grant has shown no actual prejudice caused by any delay attributable to the State.
. ¶ 26. The supreme court has noted the importance of the prejudice factor and has attempted to protect against the type of problems listed in Barker, however, it has remained reluctant to uphold dismissal of *322 charges on speedy trial grounds where the defendant suffered no actual prejudice. State v. Woodall, 801 So.2d 678(¶ 24) (Miss.2001). This Court finds the prejudice factor to weigh in favor of the State.
¶ 27. Having given due consideration to each of the Barker factors, this Court finds no violation of Grant’s right to a speedy trial.
II.
Whether the trial court erred by denying Grant’s motion to suppress certain crime lab evidence.
¶ 28. Grant contends that the trial court erred in denying his motion to suppress certain evidence. He claims that the chain of custody was broken' regarding the items collected (dress and sheets) and placed into bags at the scene of the crime. Grant maintains that there was “a reasonable inference of probable tampering” or substitution of evidence.
¶ 29. Grant argues that the basement room of the courthouse where the evidence was stored was not secure. He also alleges that a trustee working in the building may have tampered with the evidence. However, testimony provided by Officer Jimmy Smith indicated that the room remained locked and to his knowledge only one person held a key to that room (the sheriff).
¶ 30. Issues regarding'the chain of custody of evidence are left to the discretion of the trial judge. Doby v. State, 532 So.2d 584, 588 (Miss.1988). “ ‘In such matters, the presumption of regularity supports the official acts of public officers,’ and the burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant.” Hemphill v. State, 566 So.2d 207, 208 (Miss.1990). The record does not reflect that the evidence in this case has been tampered with or substituted. Grant has failed to establish or support this contention which requires more than mere possibilities. Spann v. State, 771 So.2d 883 (¶¶ 26, 27) (Miss.2000).
III.
Whether the jury verdict was against the weight of the evidence.
¶ 31. “In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.” Isaac v. State, 645 So.2d 903, 907 (Miss.1994).
¶ 32. Grant contends that the jury’s decision was based “solely on conjecture and inference.” He maintains that he was not identified by the victim, that the evidence was circumstantial and the jury dismissed the testimony of his alibi witness.
¶ 33. The victim testified that Grant, her nephew, had,raped her. The unimpeached word of a rape victim is sufficient to sustain a conviction of rape. Christian v. State, 456 So.2d 729, 734 (Miss.1984). The testimony of the victim was not impeached.
¶ 34. Amy Winters of the Mississippi Crime Lab testified that semen was found on the dress and sheets collected from Ms. Davis’ home. She stated.that the DNA analysis, indicated that “The profile of the DNA and DNA profile from Wayne Morris Grant’s blood is consistent with the two stains that are shown here on the chart— one from the dress and one of the cuttings from the sheet.” She stated that “For the DNA markers that were tested, this profile would occur approximately one in greater than ten billion in Caucasian, African-American, and Spanish populations.”
*323 ¶ 35. “The jury is the sole judge of the credibility of witnesses, and the jury’s decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.” Billiot v. State, 454 So.2d 445, 463 (Miss.1984). This Court finds that the record contains substantial and believable evidence upon which a jury could, and did, find Grant guilty of sexual battery.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF PERRY COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PERRY COUNTY.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, CONCUR.

. For purposes of this opinion, the victim’s name has been changed.