986 So.2d 965 (2007)
Terry DORA, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KP-00487-COA.
Court of Appeals of Mississippi.
May 15, 2007.
Rehearing Denied October 2, 2007.
*968 Terry Dora, Appellant, pro se.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Terry Dora ("Dora") was convicted of possession of more than thirty grams of cocaine. He was sentenced, as an habitual offender, to serve a term of sixty years, without probation, parole, reduction, or suspension in the custody of the Mississippi Department of Corrections. The trial court also fined Dora the sum of $2,000,000. On appeal, Dora argues that: (1) the verdict was against the overwhelming weight of the evidence, (2) prosecutorial misconduct warranted a mistrial, (3) the court erred in denying jury instructions D-12 and 13, (4) one of the State's jury instructions misstated the law, (5) the indictment should have been quashed, (6) the indictment should not have been amended, (7) he was denied a speedy trial, (8) the trial court should have suppressed evidence seized pursuant to a warrant, (9) the trial court should have suppressed Rebecca Dora's statement due to State discovery violation, (10) there is newly discovered evidence, (11) instruction D-16 should have been granted, (12) Dora received ineffective assistance of counsel, and (13) the cumulative effect of these errors deprived Dora of a fair trial. We find error and reverse and remand for a new trial.

FACTS
¶ 2. On August 3, 2001, at about 12:30 p.m., the Columbus Police Department executed a search warrant for a home where suspected drug sales had occurred. The home was owned and occupied by Rebecca Dora, Dora's aunt. When the warrant was executed, Rebecca and her seventeen-year-old daughter were found in the living room on the couch. Officer Oscar Lewis testified he found Dora exiting the bathroom. Lewis ordered Dora on the ground. Lewis found 35.6 grams of crack cocaine hidden underneath tissue paper in the bathroom garbage can. He also found $1,050 hidden under towels in the bathroom shelves. A plastic bag of coffee grounds were in Dora's pockets. A set of digital scales was found on the table in the adjoining kitchen. Two grams of cocaine, some marijuana and $2,500 in cash were also found in Rebecca's bedroom. A mirror with suspected cocaine residue was found in the living room.
¶ 3. Dora, Rebecca and her daughter were all arrested for possession. The charges against Rebecca's daughter were soon dropped. Initially, Rebecca took responsibility for all the drugs found. At trial, she only took responsibility for what was found in her bedroom. She said that Dora had offered her $5,000 to "take the rap" for the cocaine. She said she did not know anything about the cash in the bathroom, but the $2,500 in her bedroom was Dora's money that he had asked her to hold for him.
¶ 4. Dora was indicted on November 7, 2001, for possession of cocaine more than thirty grams. After trial, the jury found Dora guilty. His appeal has been deflected to this Court for review.

ANALYSIS

I. Did the prosecutor's comment on Dora's failure to testify warrant a mistrial?
¶ 5. Of the thirteen issues argued by Dora, we find merit in Dora's argument that the prosecutor's comment on his failure to testify warranted a mistrial. Dora argues that the trial court erred in denying his motion for mistrial. The State *969 argues that these comments were not about Dora's failure to testify.
¶ 6. The standard of review for denial of a motion for mistrial is abuse of discretion. Caston v. State, 823 So.2d 473, 492(¶ 54) (Miss.2002). "A mistrial is reserved for those instances where the trial court cannot take any action which would correct improper occurrences." Easter v. State, 878 So.2d 10, 21(¶ 34) (Miss.2004).
¶ 7. The determination appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by that prejudice. Caston, 823 So.2d at 495(¶ 71). During closing, a lawyer is entitled to argue her case, drawing all rational inferences which come from the evidence presented in the courtroom. Id. at 495-96(¶ 72). Attorneys are allowed wide latitude in arguing cases to the jury; however, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. Sheppard v. State, 777 So.2d 659, 661(¶ 7) (Miss.2000).
¶ 8. The right not to testify against one's self is secured by the Fifth Amendment to the United States Constitution as well as in Article 3, section 26 of the Mississippi Constitution. This includes the right not to have the State comment on the exercise of this right. Whigham v. State, 611 So.2d 988, 995 (Miss.1992). "The right would be eviscerated if the government were free to make invidious reference when an accused chose not to testify." Id. The prosecutor is prohibited from making both direct comments and those "which could be reasonably construed by a jury as a comment on the defendant's failure to testify." Griffin v. State, 557 So.2d 542, 556 (Miss.1990). "[O]nce such improper comments are made the defendant is entitled to a mistrial. The error is incurable." Livingston v. State, 525 So.2d 1300, 1307 (Miss.1988). This is regardless of the overwhelming weight of the evidence. Id. at 1306.
¶ 9. For example, in Whigham, it was reversible error for the prosecutor to comment that the State's witnesses were unrebutted and unopposed, where the only one who could have rebutted the witnesses was the defendant. Whigham, 611 So.2d at 996. Whigham was convicted of sexually assaulting Norma Pratt. Id. at 990. Her brother Stewart was an eyewitness. Id. Both testified that Whigham had fondled her breasts. Id. at 990-92. The court held:
when the defendant is the only person who can rebut the testimony of a State witness, the prosecuting attorney is not free in his argument to also inform the jury that if what the State's witness said was not true, the defendant would, or could have taken the stand and defied it. . . . [I]t follows that the prosecution is equally prohibited from doing so indirectly or by implication. While the jury. . . may make such a deduction . . . it must have been entirely on its own, unassisted by any affirmative comment whatsoever from the State.
Id. at 995. The court found that Norma, Stewart, and Whigham were the only three eyewitnesses to this assault. Id. "The prosecution knew this, the jury knew it. The only living person capable of denying the positive testimony of Norma and Stewart. . . was Whigham." Id. From the prosecutor's remarks about these witnesses being unopposed, "the jury could reach no other conclusion except that the prosecuting attorneys telling them, `Look, if [the State's eyewitnesses] were not telling you the truth, [the defendant] would *970 have taken this witness stand and denied it.'" Id. at 996. The court reversed and remanded the case for a new trial, despite the fact that Whigham did not object to these comments at trial. Id. This was also despite the fact that the court, too, found the evidence undisputed. Id. at 992.
¶ 10. In this case, during rebuttal closing arguments, the prosecutor argued:
You also heard the fact that it is undisputed, ladies and gentlemen, that this defendant told Rebecca Dora, I will give you $5,000; I'm sorry I got you into this trouble, but I will give you $5,000 to go in there and take the rap for me. That is also undisputed. Nobody came forward and said that didn't happen. I submit to you, Ladies and Gentlemen, that that is strong evidence that 
Dora objected and moved for a mistrial. The court overruled the objection and denied the motion.
¶ 11. During the trial, both Rebecca and her daughter testified that at one point they were in the back of a police car with Dora. No one else was present. This is when they say Dora made this statement. Only Dora, Rebecca and her daughter heard the conversation. The prosecution knew it, and the jury knew it. The only living person who could "come forward and say that didn't happen" was Dora. The jury could reach no other conclusion except that the prosecutor was telling them, "Look, if Rebecca and her daughter were not telling the truth, Dora would have taken this witness stand and denied it."
¶ 12. Additionally, the prosecutor commented that two other pieces of evidence were "undisputed." First, he claimed it was undisputed that Dora placed the cocaine in the trash can. As Dora, Rebecca and her daughter were the only occupants in the house at the time, he was the only one who could have said differently. Second, the prosecutor told the jury that Officer Lewis's testimony that Dora was exiting the bathroom was undisputed. As Dora and Lewis were the only people present at the time, Dora was the only person who could have come forward and denied it.
¶ 13. Whigham instructs that these comments were impermissible. Therefore, based on Whigham and Livingston, we find that the trial court abused its discretion in not granting the mistrial. We reverse and remand for a new trial consistent with this opinion.
¶ 14. We now reach those issues that could require us to dismiss the indictment or that would be helpful to the trial court on remand.

II. Was Dora denied a speedy trial?
¶ 15. Dora argues that both his statutory constitutional rights to speedy trial have been violated. The State counters that Dora waived these rights, because they are asserted for the first time on appeal.

A. Statutory right to a speedy trial
¶ 16. By statute, criminal defendants must be tried within 270 days of arraignment, unless good cause is shown by the State. Miss.Code Ann. § 99-17-1 (Rev.2000). Explicit waiver of arraignment may also be used to trigger the state right. Felder v. State, 831 So.2d 562, 570(¶ 22) (Miss.Ct.App.2002).
¶ 17. Dora waived arraignment on May 21, 2002. This began the statutory clock. Trial did not commence until over two years later, November 9, 2004. We need not examine whether any of this delay was attributable to Dora, or whether there was no good cause. Dora waited to raise this issue for the first time on appeal, June 13, 2006. Because he did not raise it within *971 the 270 day period, he has acquiesced to any violation of his statutory speedy trial rights. Little v. State, 744 So.2d 339, 345(¶ 24) (Miss.Ct.App.1999).

B. Constitutional right to a speedy trial
¶ 18. Three years, three months, and six days elapsed between Dora's arrest and trial. Dora argues but for this delay, he would not have been sentenced as an habitual offender, and Rebecca would not have testified against him. He maintains that for the three years prior to his trial, she claimed full responsibility for the drugs.
¶ 19. Unlike the statutory right, failure to assert the constitutional right is not fatal to the claim. State v. Woodall, 801 So.2d 678, 685(¶ 22) (Miss. 2001) (quoting Barker, 407 U.S. at 528, 92 S.Ct. 2182); Smith v. State, 550 So.2d 406, 409 (Miss.1989). When the constitutional right to a speedy trial violation is raised for the first time on appeal, the case is remanded to the lower court to consider reasons for the delay. State v. Woodall, 744 So.2d 747, 749-50(¶ 11) (Miss.1999). On remand, the court is instructed to conduct a constitutional speedy trial hearing.

III. Was the jury properly instructed?
¶ 20. Dora next argues that he was not allowed to instruct the jury on his theory of the case with instructions D-12, D-13, and D-16. He also complains that the jury was improperly instructed on the law of possession in instruction S-4. The State responds that the jury was properly instructed.
¶ 21. In reviewing the granting or refusal of a jury instruction, we read all the jury instructions actually given as a whole. Whitten v. Cox, 799 So.2d 1, 16(¶ 39) (Miss.2000). If they fairly announce the law and create no injustice, no reversible error will be found. Id. A defendant is entitled to jury instructions on his theory of the case if there is evidence that would support a jury's finding on that theory. Montana v. State, 822 So.2d 954, 962(¶ 29) (Miss.2002).

A. Theory of the case

1. Instructions D-12 and D-13
¶ 22. First, Dora complains that instructions D-12 and D-13 were required because they presented his theory that Rebecca was an accomplice.
¶ 23. Proffered instruction D-12 stated:
Rebecca Dora is alleged to be an accomplice in this case and the testimony of an accomplice is to be considered with great care and caution and you may give it such weight and credit as you deem it is entitled.
Further that the evidence of an accomplice should be weighed with great caution, jealousy, and distrust, and the jury may disbelieve such testimony altogether.
The trial court refused this instruction on the basis that there was no evidence to support it. Likewise, proffered instruction D-13, which defined "accomplice," was refused.
¶ 24. We hold the trial court properly refused these instructions. As Dora recognizes elsewhere in his brief, his theory at trial was actual innocence. Indeed, this is what his counsel ably presented and argued to the jury. Furthermore, there was no evidence that Rebecca and Dora were accomplices. The competing evidence at trial linked either Dora alone with the cocaine, or Rebecca and her boyfriend to the cocaine. This issue has no merit.

*972 2. Instruction D-16

¶ 25. Next, Dora argues that the trial court should have granted D-16 because it presented his theory of actual innocence. The State objected on the basis that the instruction was asking the court to comment on the evidence. The trial court refused it, because it operated as a directed verdict. We agree.
¶ 26. Proffered instruction, D-16 stated:
The owner of the house at 1802 Washington Avenue in Columbus, Mississippi, Rebecca Dora and her long time live-in boyfriend, Willie Henley, were dealing in crack cocaine.
In order to save Rebecca Dora and Willie Henley from prosecution, Rebecca Dora and [her daughter] are trying to put the possession of cocaine on Terry Dora.
While there certainly was evidence for the jury to conclude these facts, the instruction, as written, compelled the jury to find these facts. The prosecution had presented sufficient evidence to support a conviction. Weighing credibility of witnesses and resolving disputed issues of fact are for the jury alone. Groseclose v. State, 440 So.2d 297, 300-01 (Miss.1983). The instruction was rightly refused.

B. Instruction S-4
¶ 27. Finally, Dora complains that Instructions S-4 incorrectly states the law of possession. In particular, he takes issue with the final sentence in the instruction. The State maintains that the jury was properly instructed on the law.
¶ 28. Instruction S-4 reads:
The court instructs the Jury that to constitute a possession, there must be sufficient facts to warrant a finding that the Defendant was aware of the presence of the particular item, and was intentionally and consciously in possession of it. It need not be actual, physical possession; constructive possession may be shown by establishing that the item involved was subject to the Defendant's dominion or control. The Defendant need not own the item in order to be in "possession" of it; and one can be in "possession" of an item that one does not own.

(emphasis added). The final sentence is a true statement of the law. Ownership is not an essential element of possession of a controlled substance. Miss.Code Ann. § 41-29-139(c) (Rev.2005). Ownership is also not an element of constructive possession. Kerns v. State, 923 So.2d 196, 199(¶ 11) (Miss.2005). All that is required is "dominion or control." Id. "Dominion" does not necessarily mean "ownership," but even if it did, control will suffice.
¶ 29. However, we note that the jury was not instructed on the complete law of possession for another reason. Nowhere in the cumulative instructions was the jury asked to find whether or not Dora was also aware of the character of the substance, i.e., that it was cocaine. This is an additional, essential element to possession of a controlled substance. Campbell v. State, 566 So.2d 475, 477 (Miss.1990); Sumrall v. State, 758 So.2d 1091, 1096(¶ 17) (Miss.Ct.App.2000). Since we are already remanding this case for a new trial, we caution that this defect should not be repeated on remand.

IV. Was the verdict against the overwhelming weight of the evidence?

V. Should the indictment have been quashed?
¶ 30. Under both of these issues, Dora argues there was insufficient evidence to support his conviction. Because we remand for a new trial, we determine that it *973 is not necessary for this Court to address these issues.

VI. Was the indictment properly amended to include habitual offender status?
¶ 31. Dora argues that the amendment was (1) untimely, (2) prejudicial, and (3) violates Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The State argues only that Dora was an habitual offender and was not surprised or prejudiced by the amendment.
¶ 32. To be sentenced as an habitual offender, the accused must be properly indicted as such. Crouch v. State, 826 So.2d 772, 775(¶ 4) (Miss.Ct.App.2002). Indictments may be amended to include habitual offender status, "if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09.
¶ 33. First, we examine Dora's argument that the amendment was untimely. In Wilson v. State, 935 So.2d 945, 948(¶ 10) (Miss.2006), the motion to amend the indictment to include habitual offender status was made months before trial, and the amendment was allowed before trial. The court noted that it is permissible to amend an indictment to charge habitual offender status even after the jury has returned a guilty verdict. Id. The court held that this was a timely amendment. Id.
¶ 34. We likewise find Dora's amendment is timely. Dora was put on notice over a year before trial that the State sought to amend the indictment to charge him as an habitual offender. The trial court held the status hearing outside the presence of the jury, after the verdict and before sentencing.
¶ 35. Next, Dora states that he was unfairly surprised by the amendment. He claims that when he was originally indicted he was not yet an habitual offender. However, unfair surprise occurs when the amendment affects the defendant's ability to defend against the substantive offense. Id. at 949(¶ 12) (quoting Swington v. State, 742 So.2d 1106, 1118(¶ 44) (Miss.1999)). Habitual offender status affects sentencing status only. Id. It does not affect the substance of the offense charged. Id. Given this, and the fact that Dora was aware for over one year that the State would seek this enhancement, we hold he was not unfairly surprised.
¶ 36. Finally, Dora maintains that the habitual offender amendment violated his right to a jury as set forth in Blakely. We disagree. The United States Supreme Court has held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (emphasis added). Blakely, in fact, quotes this very language. Blakely, 542 U.S. at 301, 124 S.Ct. 2531. This issue has no merit.

VII. Should the seized evidence have been suppressed?
¶ 37. Dora wishes to suppress the evidence obtained during the search of Rebecca's house and the later search of his truck.
¶ 38. The trial court found he had no standing to challenge the search of a house he neither resided in nor owned. We agree. The Fourth Amendment protection against unlawful searches is a personal right and cannot be asserted vicariously. Ware v. State, 410 So.2d 1330, 1331 (Miss.1982). The United States Supreme Court has explained:

*974 A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.
Rakas v. Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). It is undisputed that Dora did not own the home nor did he reside there. As such, he cannot complain of the search of Rebecca's home.
¶ 39. As for the truck, there was no evidence found in it, retrieved from it, or used against him. This issue has no merit.
VIII. Did a discovery violation warrant the suppression of Rebecca's statement?
IX. Does Rebecca's guilty plea constitute newly discovered evidence?
X. Was Dora denied effective assistance of counsel?
XI. Did cumulative error deprive Dora of a fair trial?
¶ 40. Because we remand the case for a new trial and a speedy trial hearing, we need not reach these issues.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.